# ORIGINAL

FILED IN OPEN COURT
James N. Hatten, Clerk

By: _____
Deputy Clerk

## GUILTY PLEA and PLEA AGREEMENT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

CRIMINAL ACTION NO. _____

# 4:07-CR-0014

Beaulieu Group, LLC, (formerly doing business as Beaulieu of America, Inc.), the

defendant, appearing through its designated representative, having received a copy of the

above-numbered CRIMINAL INFORMATION, hereby pleads GUILTY to Count ONE

thereof. The defendant, its counsel, and counsel for the United States ("the

government"), subject to approval by the Court, have agreed upon a binding negotiated

plea in this case, the terms of which are as follows:

1. The defendant admits that it is guilty as charged in the Information and hereby

waives any and all objections based upon the form of the Information and/or any

applicable statute of limitations. The defendant waives speedy trial defenses to the

charges against it, except insofar as such a defense could be asserted as of the date of this

Plea Agreement.

2. The defendant further admits that it committed the specific violations under

Title 26, United States Code, §7206(1) set forth in Count One of the Information. The

defendant stipulates and agrees to the following factual basis for its plea of guilty:

Count One:  In 1986, the defendant entered into a purchase agreement with

Barmag AG for the purchase of four 12 position spinning machines for the

production of carpet yarn at the defendant's Bridgeport, Alabama plant. In 1988,

the defendant assigned this purchase agreement to Allied Irish International

Financial Services Limited ("AIFS") and entered into an agreement with AIFS to lease the Barmag machines for four years. The operating lease, known as "Alabama 1," called for the defendant to make monthly payments of DM 310,000 during the four year term that ran from March 10, 1989 through March 10, 1993. The lease included an option to purchase the equipment at fair market value, at any time after the second anniversary of the commencement date of the lease. On March 10, 1993, the defendant exercised its right to purchase the equipment for a total amount of $12,000,000. After exercising the buyout provision, the defendant capitalized the four Barmag machines and depreciated the cost of the machines during the years 1995 through 2000. On its Form 1065, for the 1995 through 2000 tax years, the defendant overstated its depreciation deduction related to Alabama I, in the total amount of $5,919,093. At the time it filed the 2000 return, the defendant did not believe the total amount of claimed deductions was true and correct.

The defendant purchased 29 Volkmann twisters during the years 1992 through 1995. The defendant paid significantly more for each Volkmann twister than if it had purchased the machines directly from the manufacturer. These machines were capitalized by the defendant and were depreciated during the years 1992 through 2000. On its Form 1065, for the 1992 through 2000 tax years, the defendant overstated its depreciation deduction in the total amount of $1,049,836. At the time it filed the 2000 return, the defendant did not believe the total amount of claimed deductions was true and correct.

3.  Other than the prosecution of the defendant in Count One referenced herein to which the defendant agrees to plead guilty, the United States Department of Justice agrees not to prosecute the defendant Beaulieu Group, LLC, Beaulieu of America, Inc., Coronet Industries, Inc., and related companies, or Carl M. Bouckaert, or Mieke D. Hanssens f/k/a Marie T. Bouckaert, for any federal criminal violations related to evidence known to the government as of the date of this Plea Agreement.  The defendant understands and agrees that nothing in this Plea Agreement shall limit the Internal Revenue Service in its collection of any taxes, interest, and penalties which may be owed by the defendant or any other individual or entity in any civil action.  The defendant further understands and agrees that this Plea Agreement cannot and does not bind state and local prosecuting authorities in any way.

4. The defendant understands and agrees that the maximum penalty that the Court may impose for Count One to which the defendant is pleading guilty is probation for a term of five years, plus a fine, costs of prosecution and a special assessment, as explained below.

5. Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the parties agree that the following specific sentence is the appropriate disposition of this case and that no additional conditions, fines, restitution or costs will be imposed as a part of the sentence:

(A) (1) Restitution shall be made to the Internal Revenue Service, an agency of the United States, by paying tax of Twenty-Two Million Six Hundred Seventy-One Thousand Seven Hundred Fifty Four dollars ($22,671,754) pursuant to the Closing Agreement As To Final Determination of Tax Liability and Specific Matters between the

defendant and the Internal Revenue Service.  The payment of restitution shall be made directly to the Internal Revenue Service on or before the date of sentencing pursuant to and in express conformity with the terms of the Closing Agreement, to be executed by the defendant prior to sentencing.

(A)(2)  Penalties shall be made to the Internal Revenue Service, an agency of the United States, by paying a penalty in the amount of Seven Million Seven Hundred and Twelve Thousand Six Hundred and Ten dollars ($7,712,610) pursuant to the Closing Agreement As To Final Determination of Tax Liability and Specific Matters between the defendant ant the Internal Revenue Service.  The total amount of moneys (restitution and penalty) made payable to the Internal Revenue Service is Thirty Million Three Hundred and Eighty Four Thousand Three Hundred and Sixty-Four ($30,384,364).

(B) The Court shall impose an aggregate fine of $2.2 million on Count One of the Information.  The defendant shall pay the full amount of the fine to the United States District Court Clerk at the time of sentencing.

(C) The costs of prosecution are stipulated by the parties to be $800,000 and are to be paid at the time of sentencing.

(D) The defendant shall pay to the United States District Court Clerk a special assessment in the amount of $400 for Counts One at the time of sentencing.

(E) The Court shall impose a sentence of five years of probation which will expire five years from the date of sentencing, unless terminated by the Court at an earlier time, subject to the standard condition that the defendant not commit another federal, state, or local crime during the period of probation, and the following special conditions:

(i) Beaulieu of America, Inc., Beaulieu Group LLC,  and successors thereto, Carl M. Bouckaert or Mieke D. Hanssens shall not commit a criminal tax offense, including but not limited to aiding and abetting an individual or business entity to commit criminal tax offenses and further including any criminal offense involving the improper deduction of ordinary and necessary business expenses. Nothing herein shall prohibit the United States from proceeding administratively, civilly, or criminally against stated entities in any separate proceeding for any alleged federal tax offense involving any tax period subsequent to the entry of the Plea pursuant to this Plea Agreement.

(ii) The defendant and its subsidiaries, owners, managers, directors, officers, and employees shall comply with the defendant's Standards of Conduct and Ethics for Employees, Officers and the Board of Managers as it currently exists and as it may be amended from time to time by the defendant's Board of Managers (provided that such amendments comport with applicable law, including provisions of the United States Sentencing Guidelines Manual for an "Effective Compliance and Ethics Program"). The defendant will promptly provide to counsel for the United States copies of such amendments.

(iii) The defendant shall submit quarterly reports to the Court regarding the operation of its compliance and ethics program, which shall include full disclosure of any alleged violations of state or federal laws and all steps taken to investigate and remedy such violations. The Court may direct the defendant to submit to an examination of its records and interrogation of knowledgeable individuals within its organization regarding these matters.

(iv) Carl M. Bouckaert will step down as Chairman and CEO of Beaulieu Group, LLC.  Mieke D. Hanssens will step down as Executive Vice President. Carl M. Bouckaert and Mieke D. Hanssens will continue as members of the Board of Managers and may serve as consultants to the defendant, subject to oversight and control by the defendant's officers and the remaining members of the Board of Managers during the period of probation.

(v) In the event that all or a majority of the equity interests or assets of the defendant are acquired by an entity previously not an affiliate of the defendant, and such entity and any successor to such entity (hereafter collectively referred to as the "acquiring entity") is not controlled, directly or indirectly, by Carl M. Bouckaert, Mieke D. Hanssens, their family members or trusts for the benefits of their family members or by some combination of such persons or trusts, then the foregoing conditions of probation shall apply only to (i) such portion of defendant's business which is maintained as a separate corporation or affiliate of the acquiring entity and/or (ii) (A) such portion of the acquiring company as may constitute the assets that were previously owned by defendant and (B) the defendant.  The conditions of probation otherwise shall not apply or flow through to the acquiring entity and the acquiring entity's affiliates; *provided, however*, that Carl M. Bouckaert and Mieke D. Hanssens shall not, during the period of probation, serve as officers of the acquiring entity or its affiliates, although they may serve as either members of the acquiring entity's or its affilitates' governing boards or as consultants, subject to oversight and control by such boards and officers during the period of probation.  For the purposes of this Paragraph,

"controlled" shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a person or entity, whether through the ownership of voting stock, by contract or otherwise.  For purposes of this Agreement, "family member" is defined as set forth in 26 USC 267(c)(4).

(F) Upon finding that the defendant has violated a condition of probation, the Court may extend the term of probation or impose more restrictive conditions.

6. Pursuant to Rule 11(d)(2)(A) of the Federal Rules of Criminal Procedure, should the Court not accept this Plea Agreement, the defendant reserves the right to withdraw its plea of guilty.  Further, in the event that this Plea Agreement is not accepted by the Court for any reason, all statute of limitations that have not expired as of the date of this Plea Agreement shall be deemed to have been tolled from the date of this Plea Agreement to: (1) 60 days following the date of non-acceptance of this Plea Agreement or (2) 60 days following the date on which a breach of this Plea Agreement by the defendant is discovered by the United States Attorney's Office.

7. Should the defendant fail to pay the restitution, fine, costs of prosecution or special assessment specified in paragraph 5(A), (B), (C ), and (D), or fail to submit timely reports pursuant to its compliance and ethics program as specified in paragraph 5(E)(iii), the government would be released from its commitment to honor all of its obligations to the defendant, and the United States would not be prohibited from prosecuting the defendant or any related entities or individuals described in paragraph 3 above, for any and all crimes.

8. WAIVER OF APPEAL: Understanding that 18 U.S.C. § 3742 provides for appeal by a defendant of its sentence under certain circumstances, the defendant expressly waives any and all rights conferred by 18 U.S.C. § 3742 to appeal the sentence imposed pursuant to this Plea Agreement.  To the maximum extent permitted by federal law, the defendant further expressly waives the right to appeal its sentence on any other ground and waives the right to attack its sentence in any post-conviction proceeding. Finally, the parties agree that nothing in this Plea Agreement shall affect the government's right and/or duty to appeal as set forth in 18 U.S.C. § 3742(b); however, if the government does appeal the defendant's sentence, the defendant shall be released from its appeal waiver.

9. This Plea Agreement shall be conditioned upon the execution of the Closing Agreement as provided in paragraph 5(A) of the Plea Agreement.

10. The execution of this Plea Agreement has been expressly authorized by the defendant's Board of Managers, and a copy of such resolution is attached hereto.  The defendant represents and warrants that no approval or authorization by any other person or entity is required for the Plea Agreement to be binding upon it.

11. The United States has made no referral to another federal or state agency involving the entities and individuals mentioned herein, and knows of no other investigation involving these entities or individuals.  This Plea Agreement only binds the United States Attorney's Office for the Northern District of Georgia and the Tax Division of the United States Department of Justice.  With the exception of federal tax offenses during the time period named herein, this Plea Agreement does not bind any other United States Attorney's Office or any other office or agency of the United States, or any state or

local prosecutor.  The United States and the defendant acknowledge that these terms

together with the Closing Agreement constitute the entire agreement between the parties.

In Open Court this 15th day of _____June_____, 2007.

_____
C. MICHAEL ABBOTT
Attorney for the Defendant

_____
BEAULIEU GROUP, LLC
Defendant
By: Peter N. Farley, General Counsel

_____
GENTRY SHELNUTT
Acting United States Attorney
Northern District of Georgia

_____
June 15, 2007
DATE

_____
CHARYSSE L. ALEXANDER
Assistant U.S. Attorney
Northern District of Georgia

_____
RANDY S. CHARTASH
Assistant U.S. Attorney
Northern District of Georgia

9

## BEAULIEU GROUP, LLC

### ACTION BY WRITTEN CONSENT OF THE BOARD OF MANAGERS

Pursuant to Section 14-11-309 of the Georgia Limited Liability Company Act, as amended, and Section 5.20 of the Second Amended and Restated Operating Agreement dated January 1, 2006, the undersigned, being the Managers who would be entitled to vote not less than the minimum number of votes that would be necessary to authorize the actions provided herein of BEAULIEU GROUP, LLC, a Georgia limited liability company (the "Company"), do hereby (i) consent to and adopt the resolutions set forth below, which resolutions shall have the same force and effect as if adopted by an affirmative vote at a duly called and held meeting of the Managers, (ii) waive all requirements of notice, and (iii) direct that this Action by Written Consent be filed with the minutes of the proceedings of the Company:

**WHEREAS**, the Board of Managers of the Company has reviewed the proposed Criminal Information entitled <u>United States of America v. Beaulieu Group, LLC</u> and the accompanying proposed Plea Agreement between the United States and Beaulieu Group, LLC (the "Plea Agreement"), a true and correct copy of which is attached to this Action by Written Consent as Exhibit A; and

**WHEREAS**, the Board of Managers of the Company has reviewed the proposed Closing Agreement As To Final Determination Of Tax Liability (the "Closing Agreement"), a true and correct copy of which is attached to this Action by Written Consent as Exhibit B; and

**WHEREAS**, the Board of Managers believes it is in the best interest of the Company to approve and authorize the Company to enter into the Plea Agreement and Closing Agreement in the form presented to the Managers as attached hereto.

**NOW, THEREFORE, BE IT RESOLVED**, that Board of Managers approves, ratifies and confirms the Plea Agreement and authorizes the Company to enter into the Plea Agreement; and **FURTHER RESOLVED**, that Board of Managers approves, ratifies and confirms the Closing Agreement and authorizes the Company to enter into the Closing Agreement; and **FURTHER RESOLVED**, that the Vice President, General Counsel, Secretary and Compliance Officer is authorized and directed to take all actions (including the payment of sums to the United States or any agency or instrumentality thereof) and to execute and deliver all agreements, instruments, indentures and documents on behalf of the Company as he deems necessary to carry out the purpose and intent of the foregoing resolutions.

This consent may be executed in two or more counterparts, each of which shall be an original and all of which together shall constitute one and the same consent.

[signatures appear on next page]

WITNESS the consent of each of the Managers entitled to vote on the date indicated, the latest of which shall be the effective date hereof.

DATE:                                    MANAGER & MEMBER:

June 3, 2007                             _____
                                         Carl M. Bouckaert

June 4, 2007                             _____
                                         Mieke De Clerck Hanssens

                                         MANAGER:

June 3, 2007                             _____
                                         Ralph J. Boe

June 3, 2007                             _____
                                         Constance H. Cantrell

June 3, 2007                             _____
                                         Sudhin Roy

June 5, 2007                             _____
                                         Joseph H. Astrachan

June 3, 2007                             _____
                                         Thomas L. Bouckaert

**EXHIBIT A**

[Criminal Information and Plea Agreement]

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ROME DIVISION

UNITED STATES OF AMERICA         :
                                 :        CRIMINAL ACTION NO.
            v.                   :
                                 :
BEAULIEU GROUP, LLC              :

THE UNITED STATES ATTORNEY CHARGES THAT:

### COUNT ONE
### (Filing False Tax Returns)

1.    The defendant, BEAULIEU GROUP, LLC, (formerly doing
business as BEAULIEU OF AMERICA, INC.) ("BEAULIEU"), is a
Subchapter S Corporation which was formed in 1977.  Shortly after
it was formed the corporation made an election to be treated as a
Subchapter S Corporation.

2.    In or about the dates stated below, in the Northern
District of Georgia and elsewhere, defendant BEAULIEU, did
willfully make and subscribe on its Partnership Form 1065, for the
tax years 1993 through 2001, which returns contained written
declarations that they were made under penalties of perjury and
filed with the Internal Revenue Service, which returns defendant
did not believe to be true and correct as to every material fact
and matter,

      a.    In or about October 1996 through October 2001,
defendant BEAULIEU  overstated its depreciation deduction related
to spinning machines at its Bridgeport, Alabama plant, in the total

amount of $5,919,093.  At the time it filed the 2000 return, the defendant did not believe the total amount of claimed deductions was true and correct;

b.   In or about October 1993 to October 2001, the defendant overstated its depreciation deduction for 29 twister machines in the total amount of $1,049,836.  At the time the defendant filed the 2000 return, the defendant did not believe the total amount of claimed deductions was true and correct.

All in violation of Title 26, United States Code, Section 7206(1).

F. GENTRY SHELNUTT
ACTING UNITED STATES ATTORNEY

RANDY S. CHARTASH
ASSISTANT UNITED STATES ATTORNEY
Georgia Bar No. 121760

600 U.S. COURTHOUSE
75 SPRING STREET, S.W.
ATLANTA, GEORGIA 30303
404.581.6009
404.581.6181

## GUILTY PLEA and PLEA AGREEMENT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

CRIMINAL ACTION NO. _____

Beaulieu Group, LLC, (formerly doing business as Beaulieu of America, Inc.), the defendant, appearing through its designated representative, having received a copy of the above-numbered CRIMINAL INFORMATION, hereby pleads GUILTY to Coun ONE thereof. The defendant, its counsel, and counsel for the United States ("the government"), subject to approval by the Court, have agreed upon a binding nego iated plea in this case, the terms of which are as follows:

1. The defendant admits that it is guilty as charged in the Information and hereby waives any and all objections based upon the form of the Information and/or any applicable statute of limitations. The defendant waives speedy trial defenses to the charges against it, except insofar as such a defense could be asserted as of the date of this Plea Agreement.

2. The defendant further admits that it committed the specific violations under Title 26, United States Code, §7206(1) set forth in Count One of the Information. The defendant stipulates and agrees to the following factual basis for its plea of guilty

Count One: In 1986, the defendant entered into a purchase agreement with Barmag AG for the purchase of four 12 position spinning machines for the production of carpet yarn at the defendant's Bridgeport, Alabama plant. In 1988, the defendant assigned this purchase agreement to Allied Irish Internation al

Financial Services Limited ("AIFS") and entered into an agreement with AIFS to lease the Barmag machines for four years. The operating lease, known as "Alabama 1," called for the defendant to make monthly payments of DM 310,000 during the four year term that ran from March 10, 1989 through March 10, 1993. The lease included an option to purchase the equipment at fair market value, at any time after the second anniversary of the commencement date of the lease. On March 10, 1993, the defendant exercised its right to purchase the equipment for a total amount of $12,000,000. After exercising the buyout provision, the defendant capitalized the four Barmag machines and depreciated the cost of the machines during the years 1995 through 2000. On its Form 1065, for the 1995 through 2000 tax years, the defendant overstated its depreciation deduction related to Alabama I, in the total amount of $5,919,093. At the time it filed the 2000 return, the defendant did not believe the total amount of claimed deductions was true and correct.

The defendant purchased 29 Volkmann twisters during the years 1992 through 1995. The defendant paid significantly more for each Volkmann twister than if it had purchased the machines directly from the manufacturer. These machines were capitalized by the defendant and were depreciated during the years 1992 through 2000. On its Form 1065, for the 1992 through 2000 tax years, the defendant overstated its depreciation deduction in the total amount of $1,049,836. At the time it filed the 2000 return, the defendant did not believe the total amount of claimed deductions was true and correct.

3. Other than the prosecution of the defendant in Count One referenced herein to which the defendant agrees to plead guilty, the United States Department of Justice agrees not to prosecute the defendant Beaulieu Group, LLC, Beaulieu of America, Inc., Coronet Industries, Inc., and related companies, or Carl M. Bouckaert, or Mieke D. Hanssens f/k/a Marie T. Bouckaert, for any federal criminal violations related to evidence known to the government as of the date of this Plea Agreement. The defendant understands and agrees that nothing in this Plea Agreement shall limit the Internal Revenue Service in its collection of any taxes, interest, and penalties which may be owed by the defendant or any other individual or entity in any civil action. The defendant further understands and agrees that this Plea Agreement cannot and does not bind state and local prosecuting authorities in any way.

4. The defendant understands and agrees that the maximum penalty that the Court may impose for Count One to which the defendant is pleading guilty is probation for a term of five years, plus a fine, costs of prosecution and a special assessment, as explained below.

5. Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the parties agree that the following specific sentence is the appropriate disposition of this case and that no additional conditions, fines, restitution or costs will be imposed as a part of the sentence:

(A) (1) Restitution shall be made to the Internal Revenue Service, an agency of the United States, by paying tax of Twenty-Two Million Six Hundred Seventy-One Thousand Seven Hundred Fifty Four dollars ($22,671,754) pursuant to the Closing Agreement As To Final Determination of Tax Liability and Specific Matters between the

defendant and the Internal Revenue Service.  The payment of restitution shall be made
directly to the Internal Revenue Service on or before the date of sentencing pursuant to
and in express conformity with the terms of the Closing Agreement, to be executed by the
defendant prior to sentencing.

(A)(2)  Penalties shall be made to the Internal Revenue Service, an agency of
the United States, by paying a penalty in the amount of Seven Million Seven Hundred
and Twelve Thousand Six Hundred and Ten dollars ($7,712,610) pursuant to the Closing
Agreement As To Final Determination of Tax Liability and Specific Matters between the
defendant and the Internal Revenue Service.  The total amount of moneys (restitution and
penalty) made payable to the Internal Revenue Service is Thirty Million Three Hundred
and Eighty Four Thousand Three Hundred and Sixty-Four ($30,384,364).

(B) The Court shall impose an aggregate fine of $2.2 million on Count One of
the Information.  The defendant shall pay the full amount of the fine to the United States
District Court Clerk at the time of sentencing.

(C) The costs of prosecution are stipulated by the parties to be $800,000 and
are to be paid at the time of sentencing.

(D) The defendant shall pay to the United States District Court Clerk a special
assessment in the amount of $400 for Counts One at the time of sentencing.

(E) The Court shall impose a sentence of five years of probation which will
expire five years from the date of sentencing, unless terminated by the Court at an earlier
time, subject to the standard condition that the defendant not commit another federal,
state, or local crime during the period of probation, and the following special conditions:

(i) Beaulieu of America, Inc., Beaulieu Group LLC, and successors thereto, Carl M. Bouckaert or Mieke D. Hanssens shall not commit a criminal tax offense, including but not limited to aiding and abetting an individual or business entity to commit criminal tax offenses and further including any criminal offense involving the improper deduction of ordinary and necessary business expenses. Nothing herein shall prohibit the United States from proceeding administratively, civilly, or criminally against stated entities in any separate proceeding for any alleged federal tax offense involving any tax period subsequent to the entry of the Plea pursuant to this Plea Agreement.

(ii) The defendant and its subsidiaries, owners, managers, directors, officers, and employees shall comply with the defendant's Standards of Conduct and Ethics for Employees, Officers and the Board of Managers as it currently exists and as it may be amended from time to time by the defendant's Board of Managers (provided that such amendments comport with applicable law, including provisions of the United States Sentencing Guidelines Manual for an "Effective Compliance and Ethics Program"). The defendant will promptly provide to counsel for the United States copies of such amendments.

(iii) The defendant shall submit quarterly reports to the Court regarding the operation of its compliance and ethics program, which shall include full disclosure of any alleged violations of state or federal laws and all steps taken to investigate and remedy such violations. The Court may direct the defendant to submit to an examination of its records and interrogation of knowledgeable individuals within its organization regarding these matters.

(iv) Carl M. Bouckaert will step down as Chairman and CEO of Beaulieu

Group, LLC. Mieke D. Hanssens will step down as Executive Vice President.

Carl M. Bouckaert and Mieke D. Hanssens will continue as members of the Board

of Managers and may serve as consultants to the defendant, subject to oversight

and control by the defendant's officers and the remaining members of the Board

of Managers during the period of probation.

(v) In the event that all or a majority of the equity interests or assets of the

defendant are acquired by an entity previously not an affiliate of the defendant,

and such entity and any successor to such entity (hereafter collectively referred to

as the "acquiring entity") is not controlled, directly or indirectly, by Carl M.

Bouckaert, Mieke D. Hanssens, their family members or trusts for the benefits of

their family members or by some combination of such persons or trusts, then the

foregoing conditions of probation shall apply only to (i) such portion of

defendant's business which is maintained as a separate corporation or affiliate of

the acquiring entity and/or (ii) (A) such portion of the acquiring company as may

constitute the assets that were previously owned by defendant and (B) the

defendant. The conditions of probation otherwise shall not apply or f ow through

to the acquiring entity and the acquiring entity's affiliates; *provided, however*, that

Carl M. Bouckaert and Mieke D. Hanssens shall not, during the period of

probation, serve as officers of the acquiring entity or its affiliates, although they

may serve as either members of the acquiring entity's or its affilitates' governing

boards or as consultants, subject to oversight and control by such boards and

officers during the period of probation. For the purposes of this Paragraph

"controlled" shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a person or entity, whether through the ownership of voting stock, by contract or otherwise. For purposes of this Agreement, "family member" is defined as set forth in 26 USC 267(c)(4).

(F) Upon finding that the defendant has violated a condition of probation, the Court may extend the term of probation or impose more restrictive conditions.

6. Pursuant to Rule 11(d)(2)(A) of the Federal Rules of Criminal Procedure, should the Court not accept this Plea Agreement, the defendant reserves the right to withdraw its plea of guilty. Further, in the event that this Plea Agreement is not accepted by the Court for any reason, all statute of limitations that have not expired as of the date of this Plea Agreement shall be deemed to have been tolled from the date of this Plea Agreement to: (1) 60 days following the date of non-acceptance of this Plea Agreement or (2) 60 days following the date on which a breach of this Plea Agreement by the defendant is discovered by the United States Attorney's Office.

7. Should the defendant fail to pay the restitution, fine, costs of prosecution or special assessment specified in paragraph 5(A), (B), (C), and (D), or fail to submit timely reports pursuant to its compliance and ethics program as specified in paragraph 5(E)(iii), the government would be released from its commitment to honor all of its obligations to the defendant, and the United States would not be prohibited from prosecuting the defendant or any related entities or individuals described in paragraph 3 above, for any and all crimes.

8. WAIVER OF APPEAL: Understanding that 18 U.S.C. § 3742 provides for appeal by a defendant of its sentence under certain circumstances, the defendant expressly waives any and all rights conferred by 18 U.S.C. § 3742 to appeal the sentence imposed pursuant to this Plea Agreement.  To the maximum extent permitted by federal law, the defendant further expressly waives the right to appeal its sentence on any other ground and waives the right to attack its sentence in any post-conviction proceeding. Finally, the parties agree that nothing in this Plea Agreement shall affect the government's right and/or duty to appeal as set forth in 18 U.S.C. § 3742(b); however, if the government does appeal the defendant's sentence, the defendant shall be released from its appeal waiver.

9. This Plea Agreement shall be conditioned upon the execution of the Closing Agreement as provided in paragraph 5(A) of the Plea Agreement.

10. The execution of this Plea Agreement has been expressly authorized by the defendant's Board of Managers, and a copy of such resolution is attached hereto. The defendant represents and warrants that no approval or authorization by any other person or entity is required for the Plea Agreement to be binding upon it.

11. The United States has made no referral to another federal or state agency involving the entities and individuals mentioned herein, and knows of no other investigation involving these entities or individuals. This Plea Agreement only binds the United States Attorney's Office for the Northern District of Georgia and the Tax Division of the United States Department of Justice. With the exception of federal tax offenses during the time period named herein, this Plea Agreement does not bind any other United States Attorney's Office or any other office or agency of the United States, or any state or

8

06/14/2007 16:35 FAX                                                                012/015

local prosecutor. The United States and the defendant acknowledge that these terms

together with the Closing Agreement constitute the entire agreement between the parties.

In Open Court this _____ day of _____, 2007.

_____
C. MICHAEL ABBOTT
Attorney for the Defendant

_____
BEAULIEU GROUP, LLC
Defendant
By: Peter N. Farley, General Counsel

_____
GENTRY SHELNUTT
Acting United States Attorney
Northern District of Georgia

_____
DATE

_____
CHARYSSE L. ALEXANDER
Assistant U.S. Attorney
Northern District of Georgia

_____
RANDY S. CHARTASH
Assistant U.S. Attorney
Northern District of Georgia

9

**EXHIBIT B**

[Closing Agreement]

ORIGINAL

## Closing Agreement As To Final Determination

## Of Tax Liability and Specific Matters

Under Section 7121 of the Internal Revenue Code, Beaulieu Group, LLC (EIN: 58-2272636), and Beaulieu of America, Inc. (EIN: 58-1299706) of P. O. Box 1248, Dalton, Georgia 30722; Carl M. Bouckaert (SSN: 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) and Mieke D. Hanssens F/K/A Marie T. Bouckaert (SSN: 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) of 1300 Morton Drive, Dalton, Georgia 30720; and the Commissioner of Internal Revenue make the following agreement:

WHEREAS, Beaulieu of America, Inc. (hereinafter referred to as "the Corporation") is a Subchapter S Corporation which was formed in 1977. Shortly after it was formed, the Corporation made an election to be treated as a Subchapter S Corporation for federal income tax purposes by filing Form 2553;

WHEREAS, Carl M. Bouckaert and Mieke D. Hanssens formerly Marie T. Bouckaert (hereinafter referred to as "Taxpayers") own, directly and indirectly, 100 percent of the issued and outstanding shares of stock of the Corporation;

WHEREAS, Beaulieu Group, LLC (hereinafter referred to as "the Partnership") is a Partnership which was formed in 1996 as a Georgia Limited Liability Company through the transfer of assets by Beaulieu of America, Inc. to Beaulieu Group, LLC;

WHEREAS, Taxpayers participated in the profit and loss sharing in the Partnership, directly and indirectly, for 1997 through 2002 at 100 percent;

WHEREAS, on each of its Corporate and Partnership income tax returns for the taxable years 1989 through 2002, the Corporation and Partnership reported all of their net ordinary income or loss to Carl and Marie Bouckaert, either directly or indirectly;

WHEREAS, Taxpayers filed a joint federal income tax return (Form 1040) for each of the taxable years 1989 through 2002, and on each of such returns claimed their proportionate share (i.e., 100%) of income or loss attributable to the Corporation and Partnership;

WHEREAS, the Corporation, Partnership and Taxpayers deducted certain payments which the Commissioner asserts they are not entitled to deduct, and which the Commissioner further asserts would result in ordinary income being increased in the following amounts, and which adjustments the Corporation, Partnership and Taxpayers dispute:

| Year Ended | Increase in Ordinary Income |
|---|---|
| December 31, 1989 | $ 1,569,605 |
| December 31, 1990 | 3,482,558 |
| December 31, 1991 | 5,024,693 |
| December 31, 1992 | 5,176,116 |

| | |
|---|---|
| December 31, 1993 | 4,544,603 |
| December 31, 1994 | 4,592,908 |
| December 31, 1995 | 7,149,351 |
| December 31, 1996 | 5,919,138 |
| December 31, 1997 | 4,827,382 |
| December 31, 1998 | 4,062,730 |
| December 31, 1999 | 3,991,644 |
| December 31, 2000 | 3,155,426 |
| December 31, 2001 | 3,113,706 |
| December 31, 2002 | 2,125,255 |

WHEREAS, the above issue arose in a case under the jurisdiction of the Large and Mid-Size Business Division;

WHEREAS, the parties wish to resolve the Federal income tax liability of the Taxpayers for the taxable years ended December 31, 1989 through December 31, 2002.

NOW, IT IS HEREBY DETERMINED AND AGREED for federal income tax purposes that:

1.      No adjustment will be made to the Federal income tax returns filed by the Partnership, Corporation or Taxpayers for the taxable years ended December 31, 1989 through December 31, 2002, except for the taxable year ended December 31, 2000 as provided herein.

2.      The Partnership's Ordinary Income and Taxpayers' taxable income shall be increased for the taxable year ended December 31, 2000 in the amount of $58,735,116.

3.      The only liability of the Taxpayers for tax and penalties is as follows:

| Year Ended | Type of Tax | Chapter Number Subchapter Letter of Internal Revenue Code | Total of Such Tax Liability for Period |
|---|---|---|---|
| 12/31/00 | Income | 1 A, I.R.C. | $22,671,754 |
| | Sec. 6663(b) penalty | 68 A, I.R.C. | $7,712,610 |
| | Other penalties | | None |

4.      Taxpayers are not liable for any interest pursuant to Title 26, United States Code, § 6601 and 6621, on any of the liabilities set forth in the preceding paragraph.

5.      Taxpayers, including their successors, are not entitled to and will not seek a refund or credit from Competent Authority or under a mutual agreement provision of any foreign tax treaty for the liabilities for tax and penalties reflected in paragraph (3).

6.      Taxpayers, including their successors, are not entitled to and will not file a claim for refund or seek refunds in connection with, or based on, objections to increases in taxable income reflected in paragraph (2) and for the liabilities for tax and penalties reflected in paragraph (3).

7.      Taxpayers are not entitled to a deduction against Federal income tax in any year for the amount of taxes and penalties paid pursuant to this agreement.  However, nothing in this agreement shall preclude Taxpayers from taking any deduction for taxes, interest, and penalties, if any, paid to State and local taxing authorities for increases to income arising out of this agreement.

8.      Taxpayers consent to the assessment and collection of the liabilities for tax and penalties determined by or resulting from the determinations of this agreement and hereby waive all defenses against and restrictions on the assessment and collection of those liabilities.

9.      The Partnership reported a $66,451,766 Net Operating Loss in 2000, which the taxpayers elected to carry back to 1998 and 1999 causing them to file refund claims in the amounts of $13,050,730 and $3,240,697, respectively for those years.  Taxpayers shall be entitled to a credit in the amount of $16,256,764 to be applied against the deficiency reflected in this Closing Agreement.

10.     This Closing Agreement is conditioned upon the acceptance by the United States District Court in the Northern District of Georgia of the terms of the binding Plea Agreement between Beaulieu Group, LLC., and the United States executed on or about June 2007, and imposition by the Court of the specific sentence provided for in the Plea Agreement.

11.     The Taxpayers shall pay the amount due for the tax and penalty reflected in paragraph (3) less the credits reflected in paragraph (9) no later than the day of sentencing by the United States District Court for the Northern District of Georgia pursuant to the terms of this binding Plea Agreement.

This agreement is final and conclusive except:

1)      The matter it relates to may be reopened in the event of fraud, malfeasance, or misrepresentation of material facts;

2)      It is subject to the Internal Revenue Code sections that expressly provide that effect be given to their provisions (including any stated exception for Code Section 7122) notwithstanding any other law or rule of law; and

3)      If it relates to a tax period ending after the date of this agreement, it is subject to any law enacted after the agreement date that applies to that tax period.

AO 1426947.7                                    3

By signing, the above parties certify that they have read and agreed to the terms of this document.

_____          Date Signed: _JUNE 6TH, 2007_
Carl M. Bouckaert

_____          Date Signed: _6-6-2007_
Mieke D. Hanssens f/k/a Marie T. Bouckaert

Beaulieu of America, Inc.                 Date Signed: _6-6-2007_

By: _Peter N. Farley_                     _Vice President & General Counsel_
                                          Title:

Beaulieu Group, LLC                       Date Signed: _6-6-2007_

By: _Peter N. Farley_                     _Vice President, General Counsel,_
                                          Title: _Secretary & Compliance Officer_


Commissioner of Internal Revenue          Date Signed: _June 12, 2007_

By: _Maria Arena_                         _Acting Dir. CTM_
                                          Title:

I have examined the specific matters      I have reviewed the specific matters
involved and recommend the acceptance     involved and recommend approval
of the proposed agreement.                of the proposed agreement.

_Lavena B. Williams_                      _____
(Receiving Officer)                       (Receiving Officer)

_Territory Manager_  _June 12, 2007_      _____  _____
(Title)              (Date)               (Title)          (Date)

## ACTION BY UNANIMOUS CONSENT
## IN LIEU OF A SPECIAL MEETING OF
## THE BOARD OF DIRECTORS OF
## BEAULIEU OF AMERICA, INC.

Pursuant to Section 14-2-821 of the Georgia Business Corporation Code, the undersigned, being all of the Directors of **BEAULIEU OF AMERICA, INC.**, a Georgia corporation (the "Corporation"), do hereby (i) consent to and take the actions set forth below by unanimous consent, which resolutions shall have the same force and effect as if adopted by unanimous affirmative vote at a meeting of the Directors duly called and held, (ii) waive all requirements of notice, and (iii) direct that this written Action by Unanimous Consent be filed with the minutes of the proceedings of the Corporation

**WHEREAS**, the Board of Directors has reviewed and considered the proposed Closing Agreement As To Final Determination Of Tax Liability and Specific Matters (the "Closing Agreement") between the Internal Revenue Service of the United States of America and the Corporation in the form presented to the Directors attached hereto as Exhibit A, and has determined that it is in the best interest of the Corporation to enter into the Closing Agreement;

**NOW, THEREFORE, BE IT RESOLVED**, that the Board of Directors hereby approves, ratifies and confirms the Closing Agreement and authorizes the Corporation to enter into the Closing Agreement; and **FURTHER RESOLVED**, that the Vice President and General Counsel is authorized and directed to take all actions and to execute and deliver all agreements, instruments, indentures and documents as he deems necessary to carry out the purpose and intent of the foregoing resolutions.

This consent may be executed in two or more counterparts, each of which shall be an original and all of which together shall constitute one and the same consent.

**WITNESS**, the consent of each of the Directors of the Corporation effective as of the date set forth opposite each signature.

**DATE**:

June 6TH, 2007

June 6 , 2007

**DIRECTOR**:

Carl M. Bouckaert

Mieke De Clerck Hanssens

# **EXHIBIT A**

[Closing Agreement]

# Closing Agreement As To Final Determination

# Of Tax Liability and Specific Matters

Under Section 7121 of the Internal Revenue Code, Beaulieu Group, LLC (EIN: 58-2272636), and Beaulieu of America, Inc. (EIN: 58-1299706) of P. O. Box 1148, Dalton, Georgia 30722; Carl M. Bouckaert (SSN: 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) and Mieke D. Hanssens F/K/A Marie T. Bouckaert (SSN: 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) of 1300 Morton Drive, Dalton, Georgia 30720; and the Commissioner of Internal Revenue make the following agreement:

WHEREAS, Beaulieu of America, Inc. (hereinafter referred to as "the Corporation") is a Subchapter S Corporation which was formed in 1977.  Shortly after it was formed, the Corporation made an election to be treated as a Subchapter S Corporation for federal income tax purposes by filing Form 2553;

WHEREAS, Carl M. Bouckaert and Mieke D. Hanssens formerly Marie T. Bouckaert (hereinafter referred to as "Taxpayers") own, directly and indirectly, 100 percent of the issued and outstanding shares of stock of the Corporation;

WHEREAS, Beaulieu Group, LLC (hereinafter referred to as "the Partnership") is a Partnership which was formed in 1996 as a Georgia Limited Liability Company through the transfer of assets by Beaulieu of America, Inc. to Beaulieu Group, LLC;

WHEREAS, Taxpayers participated in the profit and loss sharing in the Partnership, directly and indirectly, for 1997 through 2002 at 100 percent;

WHEREAS, on each of its Corporate and Partnership income tax returns for the taxable years 1989 through 2002, the Corporation and Partnership reported all of their net ordinary income or loss to Carl and Marie Bouckaert, either directly or indirectly;

WHEREAS, Taxpayers filed a joint federal income tax return (Form 1040) for each of the taxable years 1989 through 2002, and on each of such returns claimed their proportionate share (i.e., 100%) of income or loss attributable to the Corporation and Partnership;

WHEREAS, the Corporation, Partnership and Taxpayers deducted certain payments which the Commissioner asserts they are not entitled to deduct, and which the Commissioner further asserts would result in ordinary income being increased in the following amounts, and which adjustments the Corporation, Partnership and Taxpayers dispute:

| Year Ended | Increase in Ordinary Income |
|---|---|
| December 31, 1989 | $ 1,569,605 |
| December 31, 1990 | 3,482,558 |
| December 31, 1991 | 5,024,693 |
| December 31, 1992 | 5,176,116 |

| | |
|---|---|
| December 31, 1993 | 4,544,603 |
| December 31, 1994 | 4,592,908 |
| December 31, 1995 | 7,149,351 |
| December 31, 1996 | 5,919,138 |
| December 31, 1997 | 4,827,382 |
| December 31, 1998 | 4,062,730 |
| December 31, 1999 | 3,991,644 |
| December 31, 2000 | 3,155,426 |
| December 31, 2001 | 3,113,706 |
| December 31, 2002 | 2,125,255 |

WHEREAS, the above issue arose in a case under the jurisdiction of the Large and Mid-Size Business Division;

WHEREAS, the parties wish to resolve the Federal income tax liability of the Taxpayers for the taxable years ended December 31, 1989 through December 31, 2002.

NOW, IT IS HEREBY DETERMINED AND AGREED for federal income tax purposes that:

1.    No adjustment will be made to the Federal income tax returns filed by the Partnership, Corporation or Taxpayers for the taxable years ended December 31, 1989 through December 31, 2002, except for the taxable year ended December 31, 2000 as provided herein.

2.    The Partnership's Ordinary Income and Taxpayers' taxable income shall be increased for the taxable year ended December 31, 2000 in the amount of $58,735,116.

3.    The only liability of the Taxpayers for tax and penalties is as follows:

| Year Ended | Type of Tax | Chapter Number Subchapter Letter of Internal Revenue Code | Total of Such Tax Liability for Period |
|---|---|---|---|
| 12/31/00 | Income | 1 A, I.R.C. | $22,67 ,754 |
| | Sec. 6663(b) penalty | 68 A, I.R.C. | $7,712,610 |
| | Other penalties | | None |

4.    Taxpayers are not liable for any interest pursuant to Title 26, United States Code, § 6601 and 6621, on any of the liabilities set forth in the preceding paragraph.

5.    Taxpayers, including their successors, are not entitled to and will not seek a refund or credit from Competent Authority or under a mutual agreement provision of any foreign tax treaty for the liabilities for tax and penalties reflected in paragraph (3).

6.      Taxpayers, including their successors, are not entitled to and will not file a claim for refund or seek refunds in connection with, or based on, objections to increases in taxable income reflected in paragraph (2) and for the liabilities for tax and penalties reflected in paragraph (3).

7.      Taxpayers are not entitled to a deduction against Federal income tax in any year for the amount of taxes and penalties paid pursuant to this agreement. However, nothing in this agreement shall preclude Taxpayers from taking any deduction for taxes, interest, and penalties, if any, paid to State and local taxing authorities for increases to income arising out of this agreement.

8.      Taxpayers consent to the assessment and collection of the liabilities for tax and penalties determined by or resulting from the determinations of this agreement and hereby waive all defenses against and restrictions on the assessment and collection of those liabilities.

9.      The Partnership reported a $66,451,766 Net Operating Loss in 2000, which the taxpayers elected to carry back to 1998 and 1999 causing them to file refund claims in the amounts of $13,050,730 and $3,240,697, respectively for those years. Taxpayers shall be entitled to a credit in the amount of $16,256,764 to be applied against the deficiency reflected in this Closing Agreement.

10.     This Closing Agreement is conditioned upon the acceptance by the United States District Court in the Northern District of Georgia of the terms of the binding Plea Agreement between Beaulieu Group, LLC., and the United States executed on or about June 2007, and imposition by the Court of the specific sentence provided for in the Plea Agreement.

11.     The Taxpayers shall pay the amount due for the tax and penalty reflected in paragraph (3) less the credits reflected in paragraph (9) no later than the day of sentencing by the United States District Court for the Northern District of Georgia pursuant to the terms of this binding Plea Agreement.

This agreement is final and conclusive except:

    1)      The matter it relates to may be reopened in the event of fraud, malfeasance, or misrepresentation of material facts;

    2)      It is subject to the Internal Revenue Code sections that expressly provide that effect be given to their provisions (including any stated exception for Code Section 7122) notwithstanding any other law or rule of law; and

    3)      If it relates to a tax period ending after the date of this agreement, it is subject to any law enacted after the agreement date that applies to that tax period.

By signing, the above parties certify that they have read and agreed to the terms of this document.

_____     Date Signed: _JUNE 6TH, 2007_
Carl M. Bouckaert

_____     Date Signed: _6-6-2007_
Mieke D. Hanssens f/k/a Marie T. Bouckaert

Beaulieu of America, Inc.               Date Signed: _6-6-2007_

_____     _Vice President & General Counsel_
By: Peter N. Farley                   Title:

Beaulieu Group, LLC                   Date Signed: _6-6-2007_

_____     _Vice President, General Counsel,_
By: Peter N. Farley                   Title: _Secretary & Compliance Officer_


Commissioner of Internal Revenue       Date Signed: _June 12, 2007_

_____     _Acting Dir. E, TM_
By:                                   Title:

I have examined the specific matters    I have reviewed the specific matters
involved and recommend the acceptance   involved and recommend approval
of the proposed agreement.              of the proposed agreement.

_Lovena B. Williams_                  _____
(Receiving Officer)                   (Receiving Officer)

_Territory Manager_  _June 12, 2007_  _____  _____
(Title)          (Date)              (Title)          (Date)

AO 14269947.7                        4

# Closing Agreement As To Final Determination

# Of Tax Liability and Specific Matters

Under Section 7121 of the Internal Revenue Code, Beaulieu Group, LLC (EIN: 58-2272636), and Beaulieu of America, Inc. (EIN: 58-1299706) of P. O. Box 1248, Dalton, Georgia 30722; Carl M. Bouckaert (SSN: 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) and Mieke D. Hanssens F/K/A Marie T. Bouckaert (SSN: 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) of 1300 Morton Drive, Dalton, Georgia 30720; and the Commissioner of Internal Revenue make the following agreement:

WHEREAS, Beaulieu of America, Inc. (hereinafter referred to as "the Corporation") is a Subchapter S Corporation which was formed in 1977. Shortly after it was formed, the Corporation made an election to be treated as a Subchapter S Corporation for federal income tax purposes by filing Form 2553;

WHEREAS, Carl M. Bouckaert and Mieke D. Hanssens formerly Marie T. Bouckaert (hereinafter referred to as "Taxpayers") own, directly and indirectly, 100 percent of the issued and outstanding shares of stock of the Corporation;

WHEREAS, Beaulieu Group, LLC (hereinafter referred to as "the Partnership") is a Partnership which was formed in 1996 as a Georgia Limited Liability Company through the transfer of assets by Beaulieu of America, Inc. to Beaulieu Group, LLC;

WHEREAS, Taxpayers participated in the profit and loss sharing in the Partnership, directly and indirectly, for 1997 through 2002 at 100 percent;

WHEREAS, on each of its Corporate and Partnership income tax returns for the taxable years 1989 through 2002, the Corporation and Partnership reported all of their net ordinary income or loss to Carl and Marie Bouckaert, either directly or indirectly;

WHEREAS, Taxpayers filed a joint federal income tax return (Form 1040) for each of the taxable years 1989 through 2002, and on each of such returns claimed their proportionate share (i.e., 100%) of income or loss attributable to the Corporation and Partnership;

WHEREAS, the Corporation, Partnership and Taxpayers deducted certain payments which the Commissioner asserts they are not entitled to deduct, and which the Commissioner further asserts would result in ordinary income being increased in the following amounts, and which adjustments the Corporation, Partnership and Taxpayers dispute:

| Year Ended | Increase in Ordinary Income |
|------------|------------------------------|
| December 31, 1989 | $ 1,569,605 |
| December 31, 1990 | 3,482,558 |
| December 31, 1991 | 5,024,693 |
| December 31, 1992 | 5,176,116 |

AO 1426947 7

| | |
|---|---|
| December 31, 1993 | 4,544,603 |
| December 31, 1994 | 4,592,908 |
| December 31, 1995 | 7,149,351 |
| December 31, 1996 | 5,919,138 |
| December 31, 1997 | 4,827,382 |
| December 31, 1998 | 4,062,730 |
| December 31, 1999 | 3,991,644 |
| December 31, 2000 | 3,155,426 |
| December 31, 2001 | 3,113,706 |
| December 31, 2002 | 2,125,255 |

WHEREAS, the above issue arose in a case under the jurisdiction of the Large and Mid-Size Business Division;

WHEREAS, the parties wish to resolve the Federal income tax liability of the Taxpayers for the taxable years ended December 31, 1989 through December 31, 2002.

NOW, IT IS HEREBY DETERMINED AND AGREED for federal income tax purposes that:

1.    No adjustment will be made to the Federal income tax returns filed by the Partnership, Corporation or Taxpayers for the taxable years ended December 31, 1989 through December 31, 2002, except for the taxable year ended December 31, 2000 as provided herein.

2.    The Partnership's Ordinary Income and Taxpayers' taxable income shall be increased for the taxable year ended December 31, 2000 in the amount of $58,735,116.

3.    The only liability of the Taxpayers for tax and penalties is as follows:

| Year Ended | Type of Tax | Chapter Number Subchapter Letter of Internal Revenue Code | Total of Such Tax Liability for Period |
|---|---|---|---|
| 12/31/00 | Income | 1 A, I.R.C. | $22,67 ,754 |
| | Sec. 6663(b) penalty | 68 A, I.R.C. | $7,712,610 |
| | Other penalties | | None |

4.    Taxpayers are not liable for any interest pursuant to Title 26, United States Code, § 6601 and 6621, on any of the liabilities set forth in the preceding paragraph.

5.    Taxpayers, including their successors, are not entitled to and will not seek a refund or credit from Competent Authority or under a mutual agreement provision of any foreign tax treaty for the liabilities for tax and penalties reflected in paragraph (3).

AO 1420047.7

2

6.      Taxpayers, including their successors, are not entitled to and will not file a claim for refund or seek refunds in connection with, or based on, objections to increases in taxable income reflected in paragraph (2) and for the liabilities for tax and penalties reflected in paragraph (3).

7.      Taxpayers are not entitled to a deduction against Federal income tax in any year for the amount of taxes and penalties paid pursuant to this agreement. However, nothing in this agreement shall preclude Taxpayers from taking any deduction for taxes, interest, and penalties, if any, paid to State and local taxing authorities for increases to income arising out of this agreement.

8.      Taxpayers consent to the assessment and collection of the liabilities for tax and penalties determined by or resulting from the determinations of this agreement and hereby waive all defenses against and restrictions on the assessment and collection of those liabilities.

9.      The Partnership reported a $66,451,766 Net Operating Loss in 2000, which the taxpayers elected to carry back to 1998 and 1999 causing them to file refund claims in the amounts of $13,050,730 and $3,240,697, respectively for those years. Taxpayers shall be entitled to a credit in the amount of $16,256,764 to be applied against the deficiency reflected in this Closing Agreement.

10.     This Closing Agreement is conditioned upon the acceptance by the United States District Court in the Northern District of Georgia of the terms of the binding Plea Agreement between Beaulieu Group, LLC., and the United States executed on or about June 2007, and imposition by the Court of the specific sentence provided for in the Plea Agreement.

11.     The Taxpayers shall pay the amount due for the tax and penalty reflected in paragraph (3) less the credits reflected in paragraph (9) no later than the day of sentencing by the United States District Court for the Northern District of Georgia pursuant to the terms of this binding Plea Agreement.

This agreement is final and conclusive except:

        1)      The matter it relates to may be reopened in the event of fraud, malfeasance, or misrepresentation of material facts;

        2)      It is subject to the Internal Revenue Code sections that expressly provide that effect be given to their provisions (including any stated exception for Code Section 7122) notwithstanding any other law or rule of law; and

        3)      If it relates to a tax period ending after the date of this agreement, it is subject to any law enacted after the agreement date that applies to that tax period.

By signing, the above parties certify that they have read and agreed to the terms of this document.

_____     Date Signed: _JUNE 6TH, 2007_
Carl M. Bouckaert

_____     Date Signed: _6-6-2007_
Mieke D. Hanssens f/k/a Marie T. Bouckaert

Beaulieu of America, Inc.             Date Signed: _6-6-2007_

By: _Peter N. Farley_                 _Vice President & General Counsel_
                                      Title:

Beaulieu Group, LLC                   Date Signed: _6-6-2007_

By: _Peter N. Farley_                 _Vice President, General Counsel,_
                                      Title: _Secretary & Compliance Officer_


Commissioner of Internal Revenue      Date Signed: _June 12, 2007_

By: _Maria Hwang_                     _Acting Dir. E, QTM_
                                      Title:

I have examined the specific matters   I have reviewed the specific matters
involved and recommend the acceptance  involved and recommend approval
of the proposed agreement.             of the proposed agreement.

_Lavena B. Williams_                  _____
(Receiving Officer)                    (Receiving Officer)

_Territory Manager_  _June 12, 2007_   _____
(Title)              (Date)            (Title)              (Date)

AO 1426947.7                          4